1  Adam A. Edwards (*pro hac vice* forthcoming)
   William A. Ladnier (SBN 330334)
2  Virginia Ann Whitener (*pro hac vice* forthcoming)
   **MILBERG, PLLC**
3  800 S. Gay Street, Suite 1100
   Knoxville, TN 37929
4  Telephone: (865) 247-0080
   Facsimile: (865) 522-0049
5  aedwards@milberg.com
   wladnier@milberg.com
6  gwhitener@milberg.com

7

8  Andrea R. Gold (*pro hac vice* forthcoming)
   **TYCKO & ZAVAREEI LLP**
9  2000 Pennsylvania Avenue NW, Suite 1010
   Washington, DC 20006
10 Tel: (202) 973-9000
   agold@tzlegal.com
11
   *Attorneys for Plaintiffs and the Proposed Class*
12

13

14

15              **UNITED STATES DISTRICT COURT**
16              **NORTHERN DISTRICT OF CALIFORNIA**

17 OMAR ABI-CHAHINE, DEREK FAITH, and          Case No. _____
   STEPHEN SMITH, on behalf of themselves
18 and all others similarly situated,           **Class Action**

19                        Plaintiffs,           **CLASS ACTION COMPLAINT**

20 v.                                           **DEMAND FOR JURY TRIAL**

21 HISENSE USA CORPORATION,
                        Defendant.
22

23

24

25

26

27

28

Plaintiffs Omar Abi-Chahine, Derek Faith, and Stephen Smith ("Plaintiffs"), on behalf of themselves and a Class of those similarly situated, bring this action by the undersigned counsel against Defendant Hisense USA Corporation, ("Defendant" or "Hisense") based upon personal knowledge of the allegations pertaining to themselves, and upon information, belief, and the investigation of counsel as to all other allegations.

## I.    INTRODUCTION

1.    Plaintiffs bring this action individually and on behalf of a Class of similarly situated owners of certain Hisense televisions that were advertised as including quantum dot light-emitting diode ("QLED") technology. This action arises from Hisense's false and deceptive advertising regarding the QLED technology within Hisense televisions marketed as containing QLED—sometimes also called "QD"—technology. In particular, despite advertising that certain models of its televisions contained QLED or QD technology, those televisions did not actually contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to fail to meaningfully contribute to the performance or display output of the television, thereby making the presence of QLED technology functionally irrelevant to the performance or display of the television (collectively, the "QLED Deficiency") despite being advertised as having such technology as described herein.

2.    Hisense markets and advertises that certain models of its televisions contain QLED or QD technology, including "mini-LED QLED" technology. These models include, but are not necessarily limited to, the 2024 model year QD5 series, the QD6 series, QD65 series, the QD7 series, the U7 series, and the U7N series, and the 2025 model year U75QG television.[1]

3.    Hisense has been aware that its QLED televisions do not have the advertised QLED technology (or include negligible amounts of the technology as to not provide the advertised benefits). Notwithstanding its knowledge, Hisense continues to advertise that certain of its QLED televisions have QLED technology when they, in fact, do not contain QLED technology or include the technology in such negligible amounts as to not provide the advertised benefits. Through this

---

[1] *See, e.g.*, https://www.hisense-usa.com/televisions/all-tvs (last visited Nov. 19, 2025).

conduct, Hisense engages in unfair, deceptive, and fraudulent conduct with the intent to deceive the consuming public.

4.      As a result of Hisense's unfair, deceptive, and/or fraudulent business practices, owners of Hisense QLED televisions, including Plaintiffs, have suffered ascertainable losses. The unfair and deceptive practices committed by Hisense were conducted in a manner giving rise to substantial aggravating circumstances.

5.      Had Plaintiffs and other Class Members known that the QLED televisions did not contain QLED technology or contained the technology in such negligible amounts as to not provide the advertised benefits, they would not have bought the Hisense QLED televisions, or else would have paid substantially less for them.

6.      Hisense advertises that its televisions include QLED technology, despite its knowledge to the contrary, in order to charge a premium price to consumers. Accordingly, Plaintiffs and Class Members paid a premium for technology that the televisions did not contain (or contained in such negligible amounts as to not provide the advertised benefits). Plaintiffs and Class Members suffered an injury in fact, incurred damages, and otherwise have been harmed by Hisense's conduct.

7.      Accordingly, Plaintiffs bring this action to redress Hisense's violations of California's Consumers Legal Remedies Act, False Advertising Law, and Unfair Competition Law, fraud, negligent misrepresentation, and for unjust enrichment.

## II.    PARTIES

### A.    Plaintiffs

8.      Plaintiff Omar Abi-Chahine is a resident and citizen of the state of California who resides in Eureka, California. On or about September 17, 2024, while a resident of Millbrae, California, Plaintiff Abi-Chahine purchased a new Hisense television for personal use from a Costco retail location in San Francisco, California.

9.      Plaintiff Derek Faith is a resident and citizen of the state of California who resides in San Fernando, California. On or about March 21, 2025, while a resident of California, Plaintiff Faith purchased a new Hisense television for personal use from Amazon's website.

10.    Plaintiff Stephen Smith is a resident and citizen of the state of California who resides in Marina Del Ray, California. On or about October 18, 2024 while a resident of California, Plaintiff Smith purchased a new Hisense television for personal use from Costco's website.

**B.    Defendant**

11.    Defendant Hisense USA Corporation is a Georgia Corporation, with its principal place of business located within Forsyth County at 7310 McGinnis Ferry Road, Suwanee, Georgia 30024. Accordingly, Defendant is a resident of the state of Georgia.

## III.    JURISDICTION AND VENUE

12.    This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The aggregated claims of the individual class members exceed the sum or value of $5,000.000.00, exclusive of interest and costs; there are more than 100 putative class members; and at least one putative class member is from a state different from Hisense.

13.    This Court has personal jurisdiction over Hisense because it conducts substantial business in this District and a substantial part of the acts and omissions complained of occurred in this District.

14.    Venue is proper in the judicial district pursuant to 28 U.S.C. § 1391(b), and Civil Code Section 1780, subdivision (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Hisense is authorized to conduct business in this District; it has availed itself of the laws and markets within this District; it does substantial business in this District; and it is subject to personal jurisdiction in this District.

## IV.    DIVISIONAL ASSIGNMENT

15.    Pursuant to Local Rules 3-2(c) and 3-2(d), assignment of this Action to the San Francisco Division or the Oakland Division is proper because a substantial part of the events or omissions giving rise to Plaintiff Abi-Chahine's claims occurred in San Mateo County.

## V. GENERAL ALLEGATIONS

### A. Hisense Televisions

16.     Hisense is headquartered in Forsyth, Georgia and sells televisions throughout the United States through numerous retailers such as Amazon, Best Buy, Target, Walmart, Costco, and Sam's Club.[2]

17.     Hisense is one of the leading sellers of televisions in the United States and in the second quarter of 2024 was second only to Samsung in US television sales.[3]

18.     Televisions are a product in high demand sold at various prices for a substantial profit.

19.     The television market changes frequently and is highly competitive. Hisense sells its televisions through retailers (both at brick-and-mortar stores and online), which would be expected to cease offering Hisense products if those products could not be sold at a profit or if consumers preferred a competing brand.

20.     Consumer demand is affected by the technical specifications of televisions, including the display technology specification.

21.     Thus, to remain competitive and stimulate consumer demand, Hisense must advertise attractive technical specifications at competitive prices. If consumers were to view Hisense televisions as less technologically advanced and choose another brand, it would have a materially adverse effect on Hisense's sales and its financial condition.

### B. Quantum Dot Display Technology: A Primer

22.     Today's standard television is commercially known as a Light-emitting diode ("LED") television. Such LED televisions utilize a Liquid-crystal display ("LCD") and many LEDs to create images on the television.

---

[2]  https://www.hisense-usa.com/authorized-retailers (last visited Nov 19, 2025) (listing all authorized retailers of Hisense televisions).

[3]  https://www.cnbc.com/2024/11/05/chinas-hisense-aims-to-become-the-no-1-tv-company-in-the-us-within-2-years.html (last visited Nov. 19, 2025).

23.     LEDs serve as the backlight for the television, emitting different colors and brightness levels when electrical currents pass through them.

24.     The LCD is placed in front of the backlight and transmits or blocks light from the LEDs, as dictated by the image to be displayed on the screen.

25.     The LCD is divided into millions of tiny sections, called pixels, that can be turned on or off to allow light and color to pass through from the backlight and create a particular image on the television.

26.     LED televisions are commonplace in the television market today largely in part to their picture quality which generally provides for better brightness, contrast, and a wider color spectrum than Cathode Ray Tube televisions, which LEDs have replaced in the market.

27.     A recent development in LED televisions has been the implementation of quantum dot technology.

28.     A quantum dot is a human-made nanoparticle that ranges in size. The size of a quantum dot determines the wavelength of light it emits and, in turn, the color it emits.

29.     Quantum dots are made using semiconductor materials such containing metals.

30.     Quantum dot technology is implemented in televisions by applying the quantum dots to a sheet of film or panel that sits between the LED backlight and the LCD.

31.     Quantum dots absorb the blue light from LEDs and re-emit pure red and green color to improve the capabilities of the LCD and allow it to reveal a wider and more saturated range of colors compared to a standard LED television as shown in the diagram below.



32.     As shown in the above diagram, in a standard LED television the white light is generated by white LEDs. In a QLED television, the QD layer converts the blue light to white light composed of blue LED plus pure red and green colors from the quantum dots. TÜV Rheinland, a consumer television testing group, explains "the presence of a QD layer in conjunction with a blue

backlight is essential to affirm the [television] display's compliance with fundamental QD characteristics." [4]

33.    As a result of the improvement in color and saturation from quantum dot technology, several major television brands have implemented this technology into their televisions, including Samsung, Vizio, Sony, and LG.

34.    Televisions implementing quantum dot technology are marketed as QLED, QD, or sometimes Quantum televisions.

35.    In order to be considered a QLED (or QD) television, the television must actually include quantum dot technology, or otherwise include quantum dot technology in a sufficient enough manner for the technology to actually provide a meaningful improvement in the television's performance. Any television that fails to include quantum dot technology (or includes only a negligible amount of the technology such that it fails to provide a meaningful improvement in performance) is *not* a QLED or QD television—and is only an LED television.

36.    Notably, because quantum dots are produced through a chemical process, the technology leaves known chemical markers. Thus, it is simple to verify, through chemical analysis and/or optical testing and analysis, if the technology is actually present in a television or is present in sufficient amounts as to provide the advertised benefits and improvement in performance. A television that does not bear these chemical markers is *not* a QLED or QD television—and is only an LED television.

37.    An LED television therefore cannot, without the existence of quantum dot technology, be considered a QLED or QD television. And, even if some QLED technology is present in the television, if it does not meaningfully contribute to the performance or display of the television, it similarly cannot truly be considered a QLED or QD television.

---

[4] Real Quantum Dot Display Certification, TÜV Rheinland, *available at* https://www.certipedia.com/quality_marks/1111303504?locale=en (last visited Nov. 19, 2025).

### C.    Industry Tests on Hisense Televisions

38.    Hisense's representations concerning the fact that its televisions contain QLED technology, and that the QLED technology provides the advertised benefits, have been reviewed by organizations like Rtings.com, which tested the Hisense U75QG and U7N models.

39.    Rtings.com's optical testing, which utilized Rtings.com's V2.0.01 methodology, undermines Hisense's representations. As part of its testing methodology, Rtings.com tests the panel technology in the televisions it reviews and produces spectral power distribution graphs. To perform the tests, and create the associated spectral power distribution graphs, Rtings.com utilizes a CR-250 Spectroradiometer to capture the intensity of light across all visible wavelengths. This allows Rtings.com to evaluate how the panel emits light of different colors, and the technologies employed by the panel to emit light. The resulting spectral power distribution graphs are the expression of the readings captured by the spectroradiometer.

40.    Rtings.com identified that the Hisense U75QG and U7N use a "KSF phosphor coating" to produce red light, not quantum dots. The unique optical signature of KSF phosphor enables easy identification, with multiple sharp peaks between 600-650 nm. This alone supports the conclusion that Hisense's televisions do not contain QLED or QD technology.

41.    The spectral power distribution graph Rtings.com published confirms this fact as the graph shows that the spectral power distribution for red-light emission shows color emission consistent with phosphor-based technology, not QLED or QD technology.



42.    Indeed, this sort of spectral power distribution can be found in Hisense televisions that Rtings.com reviewed and tested, such as the U7N—which Hisense markets as a QLED television. The spectral distribution for the Hisense U7N, which is included below, indicates that the televisions "uses a KSF phosphor to produce reds *instead of quantum dots*, which produce[] a unique multi-peak pattern. Even more interestingly, the green peak isn't quite as narrow as we'd expect for a quantum dot TV."[5] From this information, Rtings.com could not determine what QLED technology, if any, the Hisense U7N utilized or included.



43.    As other testing groups, such as TÜV Rheinland, have noted—based on established quantum dot certification and testing standards—"[t]he presence of a QD layer in conjunction with a blue blacklight unit is essential to affirm the [television] display's compliance with fundamental QD characteristics."[6] Thus, the use of a KSF phosphor coating in the television's display—instead of a QD layer with a blue backlight—fails to meet the standard for QLED technology under established certification standards. Any television employing a KSF phosphor coating, like the Hisense U7N, for example, would therefore *not* be a QLED television.

---

[5]  Adam Babcock, "Colors," *QLED vs. OLED: Which One Is The Best?*, Rtings.com, https://www.rtings.com/tv/learn/qled-vs-oled#colors (last visited Nov. 19, 2025) (emphasis added).

[6]  Real Quantum Dot Display Certification, TÜV Rheinland, *available at* https://www.certipedia.com/quality_marks/1111303504?locale=en (last visited Nov. 19, 2025).

44.     Rtings.com's testing of a purported QLED Hisense television is in stark contrast to other QLED televisions Rtings.com has tested, which appear to be QLED televisions that do not have the QLED Deficiency.

45.     For example, Rtings.com's testing of the Sony Bravia 9 QLED television does not conclude that the television uses a KSF phosphor coating to produce red light.[7]

46.     Similarly, the spectral power distribution results Rtings.com posted for the Sony Bravia 9 QLED television are consistent with a television utilizing QLED or QD technology to produce red light, as opposed to a KSF phosphor.[8]



47.     Television manufacturers, including Hisense, market their televisions as "QLED," even when they lack QLED technology. Through its rigorous testing standards, Rtings.com closely reviews purportedly QLED televisions to "discover what QLED TVs are worth buying and which ones *use the [QLED] term to make them sound better than they really are*."[9] As explained above, QLED technology is an important aspect that can directly impact the television's display, including the color displayed on screen.

---

[7] Samuel Breton, Ben Trudeau, and John Peroramas, *Sony Bravia 9 QLED TV Review*, Rtings.com https://www.rtings.com/tv/reviews/sony/bravia-9-qled (last visited Nov. 19, 2025).

[8] *Id.*

[9] Ben Trudeau, *The 5 Best QLED TVs of 2025*, Rtings.com, https://www.rtings.com/tv/reviews/best/by-type/qled (Aug. 27, 2025) (last visited Nov. 19, 2025) (emphasis added).

48.    And Rtings.com's testing of the QLED technology is generally applicable to other televisions marketed as containing QLED technology—particularly Hisense's televisions. Rtings.com explained that its review and testing of a purportedly QLED television provided data that would be applicable to other models, regardless of minor variations between the models, such as the blacklight array or the size of the television.[10]

49.    Notably, Rtings.com once included certain Hisense televisions that were advertised as including QLED technology among its list of "Best QLED TVs." However, following further review, Rtings.com *removed* them from the list.[11] Specifically, Rtings.com removed three different models of Hisense "QLED" televisions—the U8N, the U7N, and the U6N—replacing them with other brand QLED televisions.[12] Rtings.com also recently explained that it eliminated its "Best Cheap QLED" television category because "there are no current cheap models *that actually utilize quantum dot technology*."[13]

50.    Given that televisions manufacturers, such as Hisense, deceptively market their televisions as including QLED technology, when they do not sufficiently include the technology, Rtings.com even began warning consumers that simply because a manufacturer advertises its televisions as being "QLED" televisions (or using other terminology), it does not mean that the television "even use[s] quantum dots at all."[14]

---

[10] *E.g.*, Jacob Falato Rodrigues, Pierre-Olivier Jourdenais, and John Peroramas, *Hisense U7N: Main Discussion*, Rtings.com, https://www.rtings.com/discussions/vHaziVvGyPuZhOU_/review-updates-hisense-u7n (last visited Nov. 19, 2025) (explaining that additional testing and review of other Hisense models was unnecessary because after reviewing the U7N—a purportedly QLED television—the reviewers "know exactly what to expect" and therefore "have no plans to test them," because regardless of individual variations, such as backlight array or size, "everything else is the same").

[11] *Compare* Ben Trudeau, *The 5 Best QLED TVs of 2025*, Rtings.com, https://www.rtings.com/tv/reviews/best/by-type/qled (Aug. 27, 2025) (last visited Nov. 19, 2025) *with* Ben Trudeau, *The 6 Best QLED TVs of 2025*, Rtings.com, https://web.archive.org/web/20250810164054/https://www.rtings.com/tv/reviews/best/by-type/qled (Apr. 23, 2025) (last visited Nov. 19, 2025).

[12] *Id.*, "Recent Updates, Aug. 27, 2025" ("Replaced . . . the Hisense U8N with the TCL QM8K, the Hisense U7N with the TCL QM7K, and the Hisense U6N with the TCL QM6K.").

[13] *Id.* (emphasis added).

[14] Adam Babcock, "QLED," *TV Panel Types: All TV Types Explained*, Rtings.com, https://www.rtings.com/tv/learn/panel-overview (last visited Nov. 19, 2025).

51.     As a manufacturer of televisions—and as a manufacturer of purportedly "QLED" televisions—Hisense was aware, or should have been aware, of established industry standards defining QLED and QD technology and its use in televisions, of the regimens and criteria established for testing televisions, and of the testing and review process by entities such as Rtings.com. Moreover, Hisense was aware, or should have been aware, of the testing results and reviews of its televisions by Rtings.com, as such reviews are common practice within the industry and are commonly relied upon by others in the industry and by consumers, including Hisense's customers.

52.     As such, Hisense was aware, or should have been aware, that some of its televisions did not contain quantum dot technology.

53.     Quantum dot technology cannot be implemented without the existence of indium and/or cadmium materials. Further, the use of a KSF Phosphor coating, rather than a QD layer with a blue backlight, does not constitute QLED technology per accepted industry standards.

54.     Hisense is marketing its QD5, QD6, QD65, QD7, U7, and U7N series 2024 model year televisions, and its U75QG 2025 model year television, as having quantum dot technology when testing of the foregoing models show that either: (i) the televisions do not have QLED technology, or (ii) that if QLED technology is present it is not meaningfully contributing to the performance or display of the televisions, meaning that they should not be advertised as QLED televisions.

**D.      Hisense's Practice of Falsely Advertising Quantum Dot Display Technology**

55.     Hisense manufactures QLED televisions and has been doing so since at least 2017.

56.     Since then, Hisense has introduced television models and claimed they were QLED or QD televisions even though they did not include quantum dot technology or included QLED technology that is not meaningfully contributing to the performance or display technology in these television models that would have legitimately allowed them to make that claim.

57.     Hisense markets directly to consumers through Hisense-usa.com. Upon information and belief, Hisense approves and controls the content of Hisense-usa.com, including the statements

about quantum dot technology at issue here, from its headquarters and principal place of business in Forsyth County, Georgia.

58.    Hisense also sells its televisions through other retailers in the United States, both in store and online, including through Amazon, Best Buy, Walmart, Costco, Sam's Club, Target, and many others.[15]

59.    Upon information and belief, Hisense formulates, approves, controls, and disseminates its advertising and marketing, including the statements about the quantum dot technology at issue here.

60.    For example, on Hisense's website, the product page for a QD6 series model television includes nomenclature highlighting the inclusion of QLED technology and makes further representations that the television includes QLED technology. This same nomenclature and identical representations regarding the inclusion of QLED technology are included on the product page for a QD5 series model television on Hisense's website:[16]



---

[15]  https://www.hisense-usa.com/authorized-retailers (last visited Nov. 19, 2025) (listing all authorized retailers of Hisense televisions).

[16]  https://www.hisense-usa.com/televisions/hisense-55-qd6-series-qled-hisense-fire-tv-55qd65nf-hisense (last visited Nov. 19, 2025); https://www.hisense-usa.com/televisions/hisense-65-class-u7-series-mini-led-uled-4k-google-tv-65u7n (last visited Nov. 19, 2025).



61.     On its website, Hisense claims that its QLED televisions will "dramatically increase the color space and improve color saturation"[17] and the television's "display . . . dramatically improve[s] your watching and playing experience."[18]

The Hisense QD6 series includes QLED Quantum Dot Color to dramatically increase the color space and improve overall color saturation for everything you watch. With the power of Fire TV built in, find, stream, and watch what you want. Use the included Voice Remote with Alexa to easily change channels, launch apps, search for titles, and more. The QD6 series also features Dolby Vision HDR and Dolby Atmos audio technology, bringing out all the detail, for an immersive audio and video experience.

# A Game Changer

Change your entertainment game! The U7 series smart display from Hisense is packed with lots of exciting features that dramatically improve your watching and playing experience. Think: Mini-LED Pro, QLED Quantum Dot color technology and 144Hz Game Mode Pro. Plus, we even equipped the U7 with a NEXTGEN TV ATSC 3.0 tuner and Wi-Fi 6E router compatibility, making it virtually future-proof.

---

[17] https://www.hisense-usa.com/televisions/hisense-55-qd6-series-qled-hisense-fire-tv-55qd65nf-hisense (last visited Nov. 19, 2025).

[18] https://www.hisense-usa.com/televisions/hisense-65-class-u7-series-mini-led-uled-4k-google-tv-65u7n (last visited Nov. 19, 2025).

62.    Hisense further represents that its QLED technology will allow one to "see color like you've never seen it before."[19] These representations are made, for example, on the product page for the QD6 and U7N series model televisions.



[19] https://www.hisense-usa.com/televisions/hisense-55-qd6-series-qled-hisense-fire-tv-55qd65nf-hisense (last visited Nov. 19, 2025); https://web.archive.org/web/20250512014135/https://www.hisense-usa.com/televisions/hisense-65-class-u7-series-mini-led-uled-4k-google-tv-65u7n (last visited Nov. 19, 2025).

63.     Similar representations are also made on Hisense's website for the 2025 model year U75QG:[20]



64.     Hisense will often repeat misleading and false statements in specification sheets, or "Spec Sheets," on their website.

65.     Hisense's marketing and listing of technical specifications of so-called QLED or QD televisions is misleading and untrue.

---

[20]     https://www.hisense-usa.com/product-page/televisions-hisense-75-class-u7-series-miniled-uled-4k-google-tv (last visited Nov. 19, 2025).

66.    Not only are Hisense's statements untrue and misleading, but whether a television actually has quantum dot technology cannot be readily verified by the consumer, especially prior to purchase.

67.    Hisense markets various models of its televisions in this manner, claiming that they contain quantum dot technology: 2024 model year QD5, QD6, QD65, QD7, U7, and U7N series models of televisions, and the 2025 model year U75QG model of television. However, upon information and belief, none of these television models contain QLED or QD technology or the QLED or QD technology is negligible such that the QLED technology fails to provide a meaningful improvement in performance or the advertised benefits

68.    Hisense's misleading and untrue statements about the quantum dot technology of its televisions are likely to deceive consumers and are intended to try and influence their decisions on whether to purchase a Hisense television.

69.    Upon information and belief, Hisense also made these misleading and untrue statements so that retailers would offer Hisense's televisions for sale in store and online and to motivate them to recommend Hisense's televisions to consumers. If Hisense's retailers did not adequately display or offer for sale Hisense's televisions, then Hisense's net sales would have decreased, and its business would have been harmed.

70.    Hisense's misleading and untrue statements about the technical specifications and performance of its televisions allow Hisense to sell its lesser-quality product at a higher price and allows Hisense to realize a profit it may not have otherwise made if it were truthful regarding the performance capabilities of its televisions.

## VI.    PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Omar Abi-Chahine**

71.    Plaintiff Omar Abi-Chahine purchased a new 65-inch QD65NF model television on or around September 17, 2024, from a Costco retail location in San Francisco, California for approximately $399.99. At the time of purchase, Plaintiff Abi-Chahine resided in Millbrae, California.

72.     For the specific model Plaintiff Abi-Chahine purchased, Costco's website advertises and markets that the television—which advertising, upon information and belief, is developed and controlled by Hisense—includes "QLED Quantum Dot Color" technology, which "dramatically increase[s] the color space and improve[s] overall color saturation for everything you watch." Further, it states that customers will "[s]ee color like [they've] never seen it before," claiming that the QLED technology "significantly broadens the range of color you perceive to create over a billion individual shades."[21]

73.     These representations precisely repeat the claims included on Hisense's website when describing other QLED or QD television models. For example, the QD6 model, which is available directly from Hisense's website, includes these same claims.[22]

74.     In every instance, Hisense claims not only that the television contains QLED or QD technology, but that it meaningfully contributes to the television's performance. Indeed, the inclusion of QLED or QD technology is a central part of the marketing and advertising of the television.

75.     Before he purchased this Hisense television, Plaintiff Abi-Chahine reviewed advertising about the television on Costco's website, which stated that the television was in fact a QLED television. Plaintiff Abi-Chahine also compared the television to other QLED or QD televisions at similar price points prior to purchase.

76.     The primary reason Plaintiff Abi-Chahine purchased the television was because it contained QLED technology, including the advertised performance benefits of that technology, such as providing better picture quality and more vivid colors, as compared to a standard LED television.

---

[21] "Product Details," Hisense 65" Class - QD6 Series - 4K UHD QLED LCD TV | Costco, https://tinyurl.com/4a4xatvx (last visited Nov. 19, 2025).

[22] *E.g.*,     https://www.hisense-usa.com/product-page/televisions-43-qd6-series-qled-fire-tv-43qd65nf (last visited Nov. 19, 2025). Upon information and belief, the QD6 model available on Hisense's website is the same model that is marketed and sold as the QD6 model through other retailers, including Costco (and including the specific model Plaintiff Abi-Chahine purchased).

77.    As a result of Hisense's false and misleading statements, Plaintiff Abi-Chahine paid more for his Hisense television than he otherwise would have paid had the television not been advertised as containing QLED or QD technology (or otherwise containing non-negligible QLED or QD technology sufficient to provide the advertised benefits of improved performance). Put simply, had Hisense truthfully marketed and advertised television, by disclosing its true quality, character, and nature—that is, that the television did, in fact, not contain QLED or QD technology (or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits of improved performance)—he would not have purchased the television, or else would have paid substantially less for it.

78.    If Plaintiff Abi-Chahine's television contained QLED or QD technology as advertised, he would purchase a Hisense television in the future. Alternatively, if the Court were to issue an injunction ordering Hisense to comply with advertising and consumer protection laws, Plaintiff Abi-Chahine would likely purchase a Hisense television in the future.

**Plaintiff Derek Faith**

79.    Plaintiff Derek Faith purchased a new 55-inch U7N model Hisense television on or about March 21, 2025, online from Amazon's website for approximately $550.00.

80.    For the specific model Plaintiff Faith purchased, Amazon's website advertises and markets that the television—which advertising, upon information and belief, is developed and controlled by Hisense—includes "QLED Color" technology, which is claimed to display a "Billion+ shades of vivid color." The website further notes that the television has "QLED" among its included "Display Technology" and has "QLED Quantum Dot Color" among its "Special Feature[s]." Specifically, Amazon's website advertises that "QLED Color is made up of quantum dots—very small particles with the ability to display over a billion shades of color." The television touts that this technology allows consumers to "[s]ee the exact hue of every blade of grass on the field and every line on the court," and "renders every frame with rich, vibrant and realistic color, ensuring that even the most minute details stand out."[23]

---

[23]  https://www.amazon.com/Hisense-Class-Mini-LED-Google-55U75QG/dp/B0F22F1VLH (last visited Nov. 19, 2025).

81.     These representations precisely repeat the claims included on Hisense's website when describing other QLED or QD television models. For example, the U7N model, which is available directly from Hisense's website, includes similar claims. For example, Hisense advertised that the television includes "Quantum Dot Color," which will allow consumers to "[s]ee a Billion+ Shades of Vivid Color."[24]

82.     In every instance, Hisense claims not only that the television contains QLED or QD technology, but that it meaningfully contributes to the television's performance. Indeed, the inclusion of QLED or QD technology is a central part of the marketing and advertising of the television.

83.     Before he purchased this Hisense television, Plaintiff Faith reviewed advertising about the television on Amazon's website, which stated that the television was in fact a QLED television. Plaintiff Faith also compared the television to other QLED or QD televisions at similar price points prior to purchase.

84.     The primary reason Plaintiff Faith purchased the television was because it contained QLED technology, including the advertised performance benefits of that technology, such as providing better picture quality and more vivid colors, as compared to a standard LED television.

85.     As a result of Hisense's false and misleading statements, Plaintiff Faith paid more for his Hisense television than he otherwise would have paid had the television not been advertised as containing QLED or QD technology (or otherwise containing non-negligible QLED or QD technology sufficient to provide the advertised benefits of improved performance). Put simply, had Hisense truthfully marketed and advertised television, by disclosing its true quality, character, and nature—that is, that the television did, in fact, not contain QLED or QD technology (or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits of

---

[24]*E.g.*, https://web.archive.org/web/20250512014135/https://www.hisense-usa.com/televisions/hisense-65-class-u7-series-mini-led-uled-4k-google-tv-65u7n    (last    visited Nov. 19, 2025). Upon information and belief, the U7N model available on Hisense's website is the same model that is marketed and sold as the U7N model through other retailers, including Amazon (and including the specific model Plaintiff Faith purchased).

improved performance)—he would not have purchased the television, or else would have paid substantially less for it.

86.     If Plaintiff Faith's television contained QLED or QD technology as advertised, he would purchase a Hisense television in the future. Alternatively, if the Court were to issue an injunction ordering Hisense to comply with advertising and consumer protection laws, Plaintiff Faith would likely purchase a Hisense television in the future.

**Plaintiff Stephen Smith**

87.     Plaintiff Stephen Smith purchased a new 43-inch QD65NF model Hisense television on or about October 18, 2024, online from Costco's website for approximately $199.99.

88.     For the specific model Plaintiff Smith purchased, Costco's website advertises and markets that the television—which advertising, upon information and belief, is developed and controlled by Hisense—includes "QLED Quantum Dot Color" technology, which "dramatically increase[s] the color space and improve[s] overall color saturation for everything you watch." Further, it states that customers will "[s]ee color like [they've] never seen it before," claiming that the QLED technology "significantly broadens the range of color you perceive to create over a billion individual shades."[25]

89.     These representations precisely repeat the claims included on Hisense's website when describing other QLED or QD television models. For example, the QD6 model, which is available directly from Hisense's website, includes these same claims.[26]

90.     In every instance, Hisense claims not only that the television contains QLED or QD technology, but that it meaningfully contributes to the television's performance. Indeed, the inclusion of QLED or QD technology is a central part of the marketing and advertising of the television.

---

[25] "Product Details," Hisense 50" Class – QD6 Series – 4K UHD QLED LCD TV, https://tinyurl.com/2h575zpw (last visited Nov. 19, 2025) (while this product page is for a 50" model, the same advertising and representations were used with regard to the 43-inch model).

[26] *E.g.*,    https://www.hisense-usa.com/product-page/televisions-43-qd6-series-qled-fire-tv-43qd65nf (last visited Nov. 19, 2025). Upon information and belief, the QD6 model available on Hisense's website is the same model that is marketed and sold as the QD6 model through other retailers, including Costco (and including the specific model Plaintiff Smith purchased).

91.     Before he purchased this Hisense television, Plaintiff Smith reviewed advertising about the television on Costco's website, which stated that the television was in fact a QLED television. Plaintiff Smith also compared the television to other QLED or QD televisions at similar price points prior to purchase.

92.     The primary reason Plaintiff Smith purchased the television was because it contained QLED technology, including the advertised performance benefits of that technology, such as providing better picture quality and more vivid colors, as compared to a standard LED television.

93.     As a result of Hisense's false and misleading statements, Plaintiff Smith paid more for his Hisense television than he otherwise would have paid had the television not been advertised as containing QLED or QD technology (or otherwise containing non-negligible QLED or QD technology sufficient to provide the advertised benefits of improved performance). Put simply, had Hisense truthfully marketed and advertised television, by disclosing its true quality, character, and nature—that is, that the television did, in fact, not contain QLED or QD technology (or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits of improved performance)—he would not have purchased the television, or else would have paid substantially less for it.

94.     If Plaintiff Smith's television contained QLED or QD technology as advertised, he would purchase a Hisense television in the future. Alternatively, if the Court were to issue an injunction ordering Hisense to comply with advertising and consumer protection laws, Plaintiff Smith would likely purchase a Hisense television in the future.

## VII.    CLASS ALLEGATIONS

95.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

96.     Plaintiffs seek to represent the following "Class":

All individuals who, in the state of California, during the class period, purchased a Hisense QD5, QD6, QD65, QD7, U7, or U7N series 2024 model year television, or a Hisense U75QG 2025 model year television, which was marketed as containing QLED or QD technology and which did not contain QLED or QD technology, or contained QLED or QD technology in such negligible amounts as to not provide the advertised benefits.

97.     Plaintiffs seek certification of the Class for all causes of action. Plaintiffs reserve the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

98.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling and accrual issues, and ending on the date of entry of judgment.

99.     Excluded from the Class are Hisense; any affiliate, parent, or subsidiary of Hisense; any entity in which Hisense has a controlling interest, any officer, director, or employee of Hisense; any successor or assign of Hisense; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

100.     Numerosity/Ascertainability: The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The exact number of Class members is unknown to Plaintiffs at this time; however, it is estimated that there are more than one thousand (1,000) individuals in the Class. The identity of such membership is readily ascertainable from Hisense's records and the records of its retailers.

101.     Common Questions of Law and Fact Predominate: There are common questions of law and fact as to Plaintiffs and all other similarly situated individuals, which predominate over questions affecting only individual members including, without limitation, the following:

        a.     Whether Hisense's QLED or QD televisions contain quantum dot technology as advertised, or whether Hisense's QLED or QD televisions contain quantum dot technology in such negligible amounts that they do not provide the advertised benefits.

b.  Whether Hisense's statements and representations about the quantum dot technology of its televisions are false or misleading.

c.  Whether Hisense knew or should have known that its QLED or QD televisions did not contain QLED or QD technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

d.  Whether Hisense knew or should have known that its statements and representations about the quantum dot technology of its televisions are false or misleading.

e.  Whether Hisense concealed from or failed to disclose to Plaintiffs and Class Members that its televisions did not contain QLED or QD technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

f.  Whether Hisense engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing its televisions as having QLED or QD technology when, in fact, they did not contain the technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

g.  Whether Hisense engaged in false or misleading advertising by selling, packaging, labeling, and/or marketing its televisions as having QLED or QD technology when, in fact, they did not contain the technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

h.  Whether Hisense has violated consumer protection statutes.

i.  Whether Hisense has been unjustly enriched.

j.  Whether Plaintiffs and Class Members either paid a premium for the televisions that they would not have paid but for Hisense's false representations or would not have purchased the televisions at all.

k.  Whether Plaintiffs and Class Members have been injured by Hisense's

misconduct, and the proper measure of their losses as a result of those injuries.

l.     Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount and nature of such damages.

m.     Whether Plaintiffs and Class Members are entitled to injunctive, declaratory, or other equitable relief, including enjoining Hisense from selling and marketing the televisions as having QLED or QD technology when, in fact, they did not contain the technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

102.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased a Hisense television that Hisense represented and sold at a higher price by claiming it contained quantum dot technology, that, in reality, it did not contain (or contained the technology in negligible amounts as to not provide the advertised benefits).

103.     <u>Adequacy of Representation</u>: Plaintiffs are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class. Moreover, Plaintiffs' attorneys are ready, willing and able to fully and adequately represent the members of the Class and Plaintiffs. Plaintiffs' attorneys are experienced in prosecuting class actions and consumer fraud and product liability cases and are committed to vigorously prosecuting this action on behalf of the members of the class.

104.     <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Hisense's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of the televisions and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Hisense's misconduct. Absent a class action, Class Members will continue to incur damages, and Hisense's

misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

105.    The claims presented in this case predominate over any questions of law or fact affecting individual Class Members.

106.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

107.    Hisense's misconduct in marketing the televisions arises out of a common omission or failure to act, which has a uniform effect on Plaintiffs and all Class Members. Plaintiffs seek damages as well as preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Hisense to stop its unlawful conduct.

108.    Hisense misrepresented or failed to disclose the true qualities of the televisions in the same manner to all consumers, including Plaintiffs and Class Members. As a result, Hisense has acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiffs and the Proposed Class)**

109.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

110.    The Hisense televisions at issue are "goods" as that term is defined in Cal. Civ. Code § 1761(a).

111.    Hisense is a "person" as that term is defined in Cal. Civ. Code § 1761(c).

112.   Plaintiffs and the Class Members are "consumers" as that term is defined in Cal. Civ. Code § 1761(d).

113.   Hisense engaged in unfair and deceptive acts in violation of the CLRA by the practices and conduct described above, and by failing to disclose and by actively concealing the QLED Deficiency. The acts and practices violate, at a minimum, the CLRA by "misrepresenting the . . . certification of goods," Cal. Civ. Code § 1770(a)(2); by "representing that goods . . . have characteristics, uses, [or] benefits . . . which they do not have," *id.* § 1770(a)(5); by "representing that goods . . . are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," *id.* § 1770(a)(7); and by "advertising goods . . . with intent not to sell them as advertised," *id.* § 1770(a)(9).

114.   Throughout the relevant period, Hisense knew or reasonably should have known that the televisions, which it advertised as containing QLED or QD technology, did not actually contain QLED or QD technology (or contained the technology in such negligible amounts as to not provide the advertised benefits).

115.   Hisense was under a duty to Plaintiffs and Class Members to disclose the true nature of the televisions because:

    a.   Hisense was in a superior position to know the true state of facts about the quality, character, and nature of the televisions;

    b.   Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true quality, character, and nature of the television, including that they were not as advertised;

    c.   Hisense knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true state of facts about the televisions; and

    d.   Hisense actively concealed and failed to disclose the existence of the true quality, character, and nature of the televisions to Plaintiffs and the Class.

116.   Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide

the advertised benefits. In failing to disclose, or otherwise actively concealing, the true quality, character, and nature of the televisions, Hisense has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

117.    Hisense intended that Plaintiffs and Class Members would, in the course of their decision to expend monies in purchasing the televisions, reasonably rely upon the misrepresentations, misleading characterizations, and material omissions concerning the quality, character, and nature of the televisions.

118.    Plaintiffs and Class Members considered the advertised QLED or QD technology included in the televisions to be material and important when deciding to purchase the televisions. The televisions' quality, character, and nature—that is, the included technology impacting the television's display and performance—are material to the average, reasonable consumer.

119.    The misrepresented facts concerning the televisions are also material because they concern central functions of the televisions (*e.g.*, the included technology that directly impacts the television's display and performance).

120.    Hisense's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Plaintiffs and Class Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers.

121.    Had Hisense disclosed the existence of the true quality, character, and nature of the televisions in its advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of the televisions and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the televisions, they either would not have purchased the televisions, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class Members overpaid for their televisions and did not receive the benefit of their bargain.

122.    Plaintiffs plausibly would have learned of the true quality, character, and nature of the televisions—that is, that they lacked the advertised QLED or QD technology, or else contained the technology in such negligible amounts as to not provide the advertised benefits—had Hisense

truthfully disclosed this information in its advertising and marketing. Accordingly, Plaintiffs and Class Members' injuries were proximately caused by Hisense's fraudulent and deceptive business practices.

123. As a direct and proximate result of Hisense's violations of the CLRA, as set forth above, Plaintiffs and Class Members have suffered ascertainable loss of monies and property, caused by Hisense's misrepresentations and failure to disclose material information.

124. Plaintiffs are providing Hisense with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). Plaintiffs reserve their right to amend this Complaint pursuant to Cal. Civ. Code § 1782(d) to seek damages.

125. Pursuant to Cal. Civ. Code § 1780, Plaintiffs seek an order enjoining Hisense from the unlawful practices described above and a declaration that Hisense's conduct violates the CLRA.

126. Plaintiffs and Class Members are therefore entitled to, and do seek, equitable relief as well as actual and punitive damages and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs and the Proposed Class)**

127. Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

128. The UCL prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200.

129. Hisense has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members the QLED Deficiency.

130. Throughout the relevant period, Hisense knew or reasonably should have known that the televisions, which it advertised as containing QLED or QD technology, did not actually

contain QLED or QD technology (or contained the technology in such negligible amounts as to not provide the advertised benefits).

131.    Hisense was under a duty to Plaintiffs and Class Members to disclose the true nature of the televisions because:

      a.    Hisense was in a superior position to know the true state of facts about the quality, character, and nature of the televisions;

      b.    Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true quality, character, and nature of the television, including that they were not as advertised;

      c.    Hisense knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true state of facts about the televisions; and

      d.    Hisense actively concealed and failed to disclose the existence of the true quality, character, and nature of the televisions to Plaintiffs and the Class.

132.    Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits. In failing to disclose, or otherwise actively concealing, the true quality, character, and nature of the televisions, Hisense has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

133.    Hisense intended that Plaintiffs and Class Members would, in the course of their decision to expend monies in purchasing the televisions, reasonably rely upon the misrepresentations, misleading characterizations, and material omissions concerning the quality, character, and nature of the televisions.

134.    Plaintiffs and Class Members considered the advertised QLED or QD technology included in the televisions to be material and important when deciding to purchase the televisions. The televisions' quality, character, and nature—that is, the included technology impacting the television's display and performance—are material to the average, reasonable consumer.

135.    The misrepresented facts concerning the televisions are also material because they concern central functions of the televisions (*e.g.*, the included technology that directly impacts the television's display and performance).

136.    Hisense's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Plaintiffs and Class Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers.

137.    Had Hisense disclosed the existence of the true quality, character, and nature of the televisions in its advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of the televisions and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the televisions, they either would not have purchased the televisions, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class Members overpaid for their televisions and did not receive the benefit of their bargain.

138.    Plaintiffs plausibly would have learned of the true quality, character, and nature of the televisions—that is, that they lacked the advertised QLED or QD technology, or else contained the technology in such negligible amounts as to not provide the advertised benefits—had Hisense truthfully disclosed this information in its advertising and marketing. Accordingly, Plaintiffs and Class Members' injuries were proximately caused by Hisense's fraudulent and deceptive business practices.

139.    Through its conduct, Hisense deceived Plaintiffs and Class Members, thereby violating the UCL and directly and proximately injuring Plaintiffs and Class Members. As a direct and proximate result of Hisense's violations of the UCL, as set forth above, Plaintiffs and Class Members have suffered ascertainable loss of monies and property, caused by Hisense's misrepresentations and failure to disclose material information

140.    The injuries suffered by Plaintiffs and Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class Members should have or could have reasonably avoided.

141.    Plaintiffs and Class Members therefore seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Hisense. Plaintiffs and Class Members further seek restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under Cal. Bus. & Prof. Code § 17200.

## THIRD CAUSE OF ACTION
### Violation of the California False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On behalf of Plaintiffs and the Proposed Class)

142.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

143.    The FAL states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property . . . , which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

144.    Hisense disseminated throughout California, through its advertising, marketing, packaging, and labeling of Hisense televisions, statements that were untrue or misleading, and which were known (or reasonably should have been known) to Hisense to be untrue and misleading to Plaintiffs and Class Members.

145.    Throughout the relevant period, Hisense knew or reasonably should have known that the televisions, which it advertised as containing QLED or QD technology, did not actually contain QLED or QD technology (or contained the technology in such negligible amounts as to not provide the advertised benefits).

146.    Hisense was under a duty to Plaintiffs and Class Members to disclose the true nature of the televisions because:

a.  Hisense was in a superior position to know the true state of facts about the quality, character, and nature of the televisions;

b.  Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true quality, character, and nature of the television, including that they were not as advertised;

c.  Hisense knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true state of facts about the televisions; and

d.  Hisense actively concealed and failed to disclose the existence of the true quality, character, and nature of the televisions to Plaintiffs and the Class.

147.    Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits. In failing to disclose, or otherwise actively concealing, the true quality, character, and nature of the televisions, Hisense has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

148.    Hisense intended that Plaintiffs and Class Members would, in the course of their decision to expend monies in purchasing the televisions, reasonably rely upon the misrepresentations, misleading characterizations, and material omissions concerning the quality, character, and nature of the televisions.

149.    Plaintiffs and Class Members considered the advertised QLED or QD technology included in the televisions to be material and important when deciding to purchase the televisions. The televisions' quality, character, and nature—that is, the included technology impacting the television's display and performance—are material to the average, reasonable consumer.

150.    The misrepresented facts concerning the televisions are also material because they concern central functions of the televisions (*e.g.*, the included technology that directly impacts the television's display and performance).

151.    Hisense's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury

to Plaintiffs and Class Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers.

152.    Had Hisense disclosed the existence of the true quality, character, and nature of the televisions in its advertising and marketing, Plaintiffs and Class Members would have learned of the true nature of the televisions and would have acted differently. Had Plaintiffs and Class Members known about the true state of facts of the televisions, they either would not have purchased the televisions, or else would have paid substantially less for them. Accordingly, Plaintiffs and Class Members overpaid for their televisions and did not receive the benefit of their bargain.

153.    Plaintiffs plausibly would have learned of the true quality, character, and nature of the televisions—that is, that they lacked the advertised QLED or QD technology, or else contained the technology in such negligible amounts as to not provide the advertised benefits—had Hisense truthfully disclosed this information in its advertising and marketing. Accordingly, Plaintiffs' and Class Members' injuries were proximately caused by Hisense's fraudulent and deceptive business practices.

154.    Plaintiffs and Class Members therefore seek to enjoin the deceptive conduct and practices by Hisense described above. Plaintiffs and Class Members further seek restitutionary disgorgement of all monies and revenues generated as a result of such deceptive conduct and practices, and all other relief allowed under Cal. Bus. & Prof. Code § 17500.

**FOURTH CAUSE OF ACTION**
**Fraud**
**(On behalf of Plaintiffs and the Proposed Class)**

155.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

156.    Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits. Despite this knowledge, Hisense failed to disclose, or otherwise actively

concealed, the true quality, character, and nature of the televisions to consumers, including Plaintiffs and Class Members. Such a failure to disclose, or otherwise active concealment of material facts, was intended to mislead consumers, including Plaintiffs and Class Members.

157.    Plaintiffs and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidence by their purchases of the televisions.

158.    Plaintiffs and Class Members were actually misled and deceived and were induced by Hisense to purchase the televisions. Had Hisense truthfully advertised the true quality, character, and nature of the televisions, Plaintiffs and Class Members would have either not purchased the televisions, or else would have paid substantially less for them.

159.    As a result of Hisense's conduct, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
**Negligent Misrepresentation**
**(On behalf of Plaintiffs and the Proposed Class)**

160.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

161.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

162.    Hisense had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of a television.

163.    Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits. Despite this knowledge, Hisense failed to disclose, or otherwise actively concealed, the true quality, character, and nature of the televisions to consumers, including Plaintiffs and Class Members. Such a failure to disclose, or otherwise active concealment of material facts, was intended to mislead consumers, including Plaintiffs and Class Members.

164.    Hisense knew or otherwise should have known, that the ordinary and reasonable consumer would be misled by Hisense's misleading and deceptive advertisements and statements, which failed to disclose and/or concealed material facts concerning the Hisense televisions that Hisense knew or should have known.

165.    Plaintiffs and Class Members justifiably acted or relied upon Hisense's misrepresentations and omissions and were actually misled and deceived and induced by Hisense to purchase the televisions. Had Hisense truthfully advertised the true quality, character, and nature of the televisions, Plaintiffs and Class Members would have either not purchased the televisions, or else would have paid substantially less for them.

166.    As a result of Hisense's conduct, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.


## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (On behalf of Plaintiffs and the Proposed Class)

167.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

168.    Plaintiffs, individually and on behalf of the proposed Class, bring this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

169.    Plaintiffs and Class Members conferred a benefit on Hisense by purchasing the televisions.

170.    Hisense has knowledge that this benefit was conferred upon it.

171.    As alleged herein, Hisense advertised and sold televisions to consumers with false display technology specifications, intending that consumers would rely on those misrepresentations and omissions and purchase the televisions from Hisense.

172.    Had Hisense advertised and sold televisions to consumers with the true display technology, Plaintiffs would not have purchased the televisions, or else would have paid substantially less for them.

173.    Hisense's material misrepresentations and omissions allowed it to sell the televisions at a higher price than their true value, while saving money on the cost of a television with actual quantum dot technology. This conduct led Hisense to reap profits that otherwise would not have been realized and harmed Plaintiffs and the Class.

174.    Plaintiffs and Class Members purchased the televisions without knowing the true quality, character, and nature of the televisions, which Hisense concealed and misrepresented. Accordingly, Hisense obtained money which rightfully belongs to Plaintiffs and Class Members.

175.    Hisense's acts and business practices offend the established public policy of California, as there is no societal benefit from false advertising, only harm. While Plaintiffs and Class Members were harmed at the time of purchase, Hisense was unjustly enriched by their misrepresentations, false statements and/or material omissions.

176.    Plaintiffs and Class Members were harmed when they purchased the Products as a result of Hisense's misrepresentations, false statements, and/or material omissions, as set forth herein. Plaintiffs and Class Members have suffered an injury in fact, including the losses of money or property, as a result of Hisense's unfair, unlawful, and/or deceptive practices.

177.    Hisense's conduct allows them to knowingly realize substantial revenues from selling the televisions at the expense of, and to the detriment of, Plaintiffs and Class Members, and to Hisense's benefit and enrichment. Hisense's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

178.    Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Hisense for the televisions, which were not as Hisense represented them to be.

179.    Hisense has been knowingly and unjustly enriched to the detriment of Plaintiffs and Class Members by collecting excess profits to which they have no right.

CLASS ACTION COMPLAINT

180.    Hisense's retention of profits is unjust because Plaintiffs were deceived by false advertisements and did not receive the benefit of their bargain—that is, the purchase of a television with QLED or QD technology, or otherwise the purchase of a television with non-negligible QLED or QD technology sufficient to provide the advertised benefits.

181.    It would be inequitable to allow Hisense to retain these profits. Hisense should be required to make Plaintiffs and Class Members whole.

182.    Plaintiffs, on behalf of themselves and Class Members, seek an order requiring Hisense to make restitution to Plaintiffs and Class Members and be disgorged of all profits arising out of the sale of the televisions.

## IX.    NO ADEQUATE REMEDY AT LAW

183.    Plaintiffs and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair and deceptive conduct at issue here. Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. As such, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. For example, to prove a CLRA claim, a Plaintiff must generally show only that a consumer is exposed to an unlawful business practice and that the consumer was damaged by the unlawful practice (if pleading a CLRA claim based in fraud, then a Plaintiff must show reliance), and the resulting actual damages being the difference in the amount paid for a product and its actual value, disregarding any false or misleading statements. This legal remedy, and its associated

damages, would not account for the full measure of damages a plaintiff would be eligible to recover under equitable remedies. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at all.

184.    Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from his purchase of a falsely advertised Hisense television is determined to be an amount less than the price premium of the product. Without compensation for the full premium price of the product, Plaintiff would be left without the parity in purchasing power to which he is entitled.

185.    Further, if Hisense's conduct is allowed to continue in the absence of injunctive and equitable relief, Plaintiffs and class members face threats of future harm. As all of the Plaintiffs allege, they would purchase Hisense television products in the future, but given Hisense's deceptive conduct, Plaintiffs cannot be sure that any advertising or marketing statements relating to whether a Hisense television contains QLED technology are accurate. Because of this, Plaintiffs at this time would not choose to purchase a Hisense television advertised as being QLED as Plaintiffs are not certain that they would not be similarly deceived. If the Court were to enter an order prohibiting Hisense's conduct, this would cure Plaintiffs' threat of future harm.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief on behalf of themselves and the Classes against the Defendant:

a.    Certification of this class action and appointment of Plaintiffs and their counsel to represent the Class;

b.    An order permanently enjoining Hisense from engaging in the unlawful, unfair, and fraudulent acts and practices alleged herein;

c.    An award for all actual, general, special, incidental, statutory, and punitive damages to which Plaintiffs and Class Members are entitled;

d.    Disgorgement of all profits and unjust enrichment that Hisense obtained from Plaintiffs and Class Members as a result of Hisense's unlawful, unfair, and fraudulent acts and practices alleged herein

e.      An award of reasonable attorneys' fees and costs to Plaintiffs and Class Members;

f.      An award or pre-judgment and post judgment interest on any monetary relief; and

g.      Such other and further relief as the Court may deem appropriate.

**XI.   DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all claims asserted in this Complaint so triable.

DATED: November 19, 2025

/s/ *William A. Ladnier*
Adam A. Edwards (*pro hac vice* forthcoming)
William A. Ladnier (SBN 330334)
Virginia Ann Whitener (*pro hac vice* forthcoming)
**MILBERG, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel:    (865) 247-0080
Fax:    (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
gwhitener@milberg.com

Andrea R. Gold (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Tel: (202) 973-9000
agold@tzlegal.com

*Counsel for Plaintiffs*
*and the Proposed Class*